UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRY SHORTS,<br><br>        Plaintiff,<br><br>    v.<br><br>CHRISTIAN PFEIFFER,<br><br>        Defendant. | Case No. 1:21-cv-00638-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION BE DISMISSED FOR FAILURE TO STATE A CLAIM AND THAT ALL OUTSTANDING MOTIONS BE DENIED AS MOOT<br><br>(ECF No. 17)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS<br><br>ORDER DIRECTING CLERK TO ASSIGN DISTRICT JUDGE<br><br>ORDER DIRECTING CLERK TO DOCKET PLAINTIFF'S SECOND AMENDED COMPLAINT |

Terry Shorts ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983.  Plaintiff filed the complaint commencing this action on April 16, 2021.  (ECF No. 1).  On May 3, 2021, the Court screened Plaintiff's complaint and found that it failed to state any cognizable claims.  (ECF No. 10).  The Court gave Plaintiff thirty days to either: "a. File a First Amended Complaint; or b. Notify the Court in writing that he wants to stand on his complaint."  (<u>Id.</u> at 8).

1

On June 1, 2021, Plaintiff filed his First Amended Complaint.  (ECF No. 16).  On June 7, 2021, without receiving permission from the Court, Plaintiff filed a Second Amended Complaint.  (ECF No. 17).

While Plaintiff failed to request leave to amend, the Court has reviewed Plaintiff's Second Amended Complaint, and for the reasons described in this order, will recommend that this action be dismissed for failure to state a claim.

Plaintiff has twenty-one days from the date of service of these findings and recommendations to file his objections.

## I.      SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).  As Plaintiff is proceeding *in forma pauperis* (ECF No. 8), the Court may also screen the complaint under 28 U.S.C. § 1915.  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).  The mere possibility of misconduct falls short of meeting this plausibility standard.  Id. at 679.  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores, Inc., 572 F.3d

2

677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted).  Additionally, a plaintiff's legal conclusions are not accepted as true.  Iqbal, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers."  Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Iqbal).

**II.      SUMMARY OF PLAINTIFF'S SECOND AMENDED COMPLAINT**

The only defendant named in this action is the Warden of Kern Valley State Prison, Christian Pfeiffer.

Plaintiff alleges as follows in his Second Amended Complaint:

Plaintiff faced continuous cruel and unusual punishment because Plaintiff had to again and again speak with officers and mental health at Kern Valley State Prison.  They all ignored Plaintiff for years.  Plaintiff filed a grievance because STG Gang Members (Two-Fivers) had threatened Plaintiff's life.  Eventually Plaintiff had to slice his arm just to find safety in the care of a crisis bed.  Plaintiff later filed another grievance because of threats against his life by another STG inmate and because his food was being sabotaged and he had again and again become sick.

D7 correctional officers refused to relay his issues to D-Yard sergeants so they could house Plaintiff appropriately, so Plaintiff continued writing the Warden.

In 2014, Plaintiff's attorney, Jon David Karowsky, confided in California Department of Corrections and Rehabilitation ("CDCR") officials information pertaining to Plaintiff's safety.  This was two years before Plaintiff was assaulted at High Desert State Prison by two men.  Plaintiff's jaw was fractured after he was hit with a rock.  He filed his first 602 while at High Desert State Prison, which addressed his safety issues.  Plaintiff thought it would be easy to just say "Hey officer I have this issue or that issue," and it would be rectified in some form.  But it has been seven years of addressing the various levels of CDCR, civil rights organizations, the inspector general's office, and about ten others, all in trying to receive assistance.

In August 2018 and September 2018 Plaintiff was threatened by STG members (Two-

Fivers).  They also questioned Plaintiff's reasons for confinement.  Plaintiff did not know these inmates, and there was no reason for them to address Plaintiff because they did not know him. Plaintiff brought it to the officers' attention, and they ignored Plaintiff and failed to protect him.  Plaintiff filed a grievance and was eventually sent to a crisis bed after slicing his arm with a razor from being overwhelmed.

Plaintiff realized in October of 2018 that he was being exposed to inmates by officers and through the inmatelocator.com website.

While in D2 Plaintiff spoke to several officers regarding his safety (officers Franco and Saldana).  Within hours, officer Saldana told inmate Miller on the open tier all that Plaintiff had stated to the officers.  Instead of protecting Plaintiff, Saldana only placed Plaintiff in more danger.

Plaintiff wrote to defendant Warden Pfeiffer on this issue, and about all that occurred in November of 2018.  Days later, on November 27, 2018, Plaintiff was sent for a mental health assessment and then placed into unit D3, which only kept Plaintiff in harm's way.

For the next six months Plaintiff confided in correctional officers and wrote the Warden, but Plaintiff was ignored.  The Warden would send D-Yard sergeants to speak to Plaintiff and it became a game in brushing Plaintiff off.

Plaintiff had ten cellmates from August 18, 2018, until July 2019.  The correctional officers again and again worked to use Plaintiff as a tester in hopes that Plaintiff would get injured or murdered.  Each cellmate was a battle and it brought on occasional cell fights.

Plaintiff was moved back to D-Yard D7, and was in a single cell for a while. Correctional Harban did not like Plaintiff much, and put an inmate in his cell.  Plaintiff had to protect himself with this cellmate.

Correctional Officers Harban and Nunez both were telling this cellmate things about Plaintiff.  This cellmate would tell Plaintiff that correctional officers Harban and Nunez were out to set Plaintiff up to be assaulted.  This was the year of 2019-2020.  Plaintiff stayed in his cell to keep himself safe.

Correctional Officers Harban and Nunez encouraged the porters to harass Plaintiff,

4

which brought on his meals being sabotaged.

Plaintiff spoke with various mental health clinicians and had been visited by ranking mental health officials.

In May of 2020 Sergeant Furlough badgered Plaintiff because he claimed that his aunt called the prison too much. He told Plaintiff to have her and his brother not call. It is Plaintiff's family's job to see about his safety if the officers that are paid to do so will not.

On May 12, 2020, Plaintiff's mental health clinician, Dr. Meeks, wrote into her laptop all of Plaintiff's safety complaints, including those he had issues with and about his food being sabotaged. She sent the email to correctional officer Morales. That email was brushed away. On May 26, 2020, there were two mental health professionals that came to see Plaintiff at the request of the Law Firm Rosen, Bien, Galvan, and Grunfeld. The law firm made the request under "The Coleman Act." Plaintiff confided in the law firm about his safety and mental health issues, but Kern Valley State Prison ignored them all.

### III.    ANALYSIS OF PLAINTIFF'S SECOND AMENDED COMPLAINT

#### A.  Section 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the

5

Constitution or federal law.  Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. County of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law").  A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'"  Preschooler II v. Clark County Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).  "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms."  Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743).  This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause."  Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights.  Iqbal, 556 U.S. at 676-77.  In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff.  See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are not liable under section 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisory position, the causal link between the supervisory defendant and the claimed constitutional violation must be specifically alleged.  Iqbal, 556 U.S. at 676-77; Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  To state a claim for relief under section 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either: were personally involved in the alleged deprivation of constitutional rights, Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); "knew of the violations and failed to act to prevent them," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); or promulgated or "implement[ed]

6

a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation," Hansen, 885 F.2d at 646 (citations and internal quotation marks omitted).

For instance, a supervisor may be liable for his or her "own culpable action or inaction in the training, supervision, or control of his [or her] subordinates," "his [or her] acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal quotation marks, and brackets omitted).

### B. Failure to Protect in Violation of the Eighth Amendment

To establish a failure to protect claim, a prisoner must establish that prison officials were deliberately indifferent to a sufficiently serious threat to the prisoner's safety. Farmer v. Brennan, 511 U.S. 825, 837 (1994). "'Deliberate indifference' has both subjective and objective components." Labatad v. Corr. Corp. of Am., 714 F.3d 1155, 1160 (9th Cir. 2013). A prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate ... safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." Farmer, 511 U.S. at 837. "Liability may follow only if a prison official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" Labatad, 714 F.3d at 1160 (quoting Farmer, 511 U.S. at 847).

As to Plaintiff's only claim, Plaintiff once again has failed to state a claim against defendant Pfeiffer. As discussed above, there is no *respondeat superior* liability in section 1983. Plaintiff does allege that there were numerous threats to his safety, and that he wrote to defendant Pfeiffer about at least some of these threats. However, Plaintiff does not allege what he wrote in the letters. Moreover, Plaintiff once again failed to sufficiently allege that defendant Pfieffer purposefully disregarded Plaintiff's safety concerns. It appears that Plaintiff was moved to a different housing unit after Plaintiff wrote one of the letters. Additionally, defendant Pfeiffer sent numerous sergeants to speak with Plaintiff regarding his issues. Finally, it appears that Plaintiff was assigned single cell status, at least temporarily. Thus, it appears

7

that defendant Pfeiffer did not ignore Plaintiff's safety concerns.  Additionally, there are no allegations, such as anything defendant Pfeiffer said or did, that would suggest that defendant Pfeiffer knew that Plaintiff faced a substantial risk of serious harm but disregarded that risk. Accordingly, Plaintiff failed to state a claim against defendant Pfeiffer, and his Second Amended Complaint should be dismissed for failure to state a claim.

While Plaintiff does not name anyone else as a defendant, even if he had, Plaintiff would still fail to state a cognizable claim.

First, Plaintiff appears to allege that officer Saldana labeled him a snitch.  The Ninth Circuit has recognized that labeling an inmate a "snitch" can pose such a substantial risk of serious harm from other inmates that it may support an Eighth Amendment claim.  See Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989).  However, in order to demonstrate that Saldana was aware that her actions exposed Plaintiff to a substantial risk of serious harm, Plaintiff must allege facts demonstrating that he was either physically harmed or was threatened with physical harm because of the "snitch" label.  See Green v. Chamberlain, 2019 WL 3302346, at *7 (E.D. Cal. Jul. 22, 2019).  Here, Plaintiff failed to allege that he was threatened with physical harm or physically harmed because of the snitch label.  Accordingly, Plaintiff has failed to state a claim against Saldana.

Second, Plaintiff alleged that correctional officers gave Plaintiff ten cellmates over a period of less than a year in the hopes that Plaintiff would get injured or murdered.  However, these allegations are conclusory, and there are no factual allegations suggesting that any officer gave Plaintiff a cellmate in the hopes that the cellmate would injure or murder Plaintiff. Moreover, while Plaintiff has alleged there were occasional cell fights, there are no allegations suggesting that any officer knew that Plaintiff would be harmed and failed to prevent it.  Thus, Plaintiff failed to allege that any officer knew that Plaintiff faced a substantial risk of serious harm but disregarded that risk.

Third, Plaintiff alleged that correctional officers Harban and Nunez told his cellmate things about him, and was told by his cellmate that they set Plaintiff up to be assaulted. However, there are no allegations suggesting that Plaintiff was ever threatened with serious

physical harm or seriously physically harmed because of the actions of defendant Harban and Nunez.  Accordingly, Plaintiff has failed to sufficiently allege that they knew that Plaintiff faced a substantial risk of serious harm but disregarded that risk.

Fourth, as to the threats Plaintiff allegedly received from other inmates, Plaintiff has failed to sufficiently allege that any officer knew that Plaintiff faced a substantial risk of serious harm yet disregarded that risk.  Plaintiff does not allege what he told any of the persons identified in the complaint from which they would know that Plaintiff was at risk of suffering serious harm, and Plaintiff has not sufficiently alleged that the risk of serious harm was obvious.  Plaintiff does allege that he filed grievances regarding his safety concerns, but Plaintiff does not allege what the grievances stated, who responded to the grievances, or what the responses stated.  Moreover, as discussed above, at least some steps were taken to protect Plaintiff.  The Court notes that Plaintiff has not alleged that he actually suffered serious harm at hands of inmates at Kern Valley State Prison, and he has now been transferred to High Desert State Prison.

Finally, Plaintiff alleged that his food was being "sabotaged," and he became sick "again and again."  Plaintiff's claims based on these allegations fail.  Plaintiff does not allege how his food was sabotaged, sufficient facts to connect his sickness to the food he was eating, or the symptoms of the sickness.  Thus, Plaintiff has failed to sufficiently allege that he faced a substantial risk of serious harm.

Accordingly, based on the foregoing, the Court will recommend that Plaintiff's complaint be dismissed for failure to state a claim.

The Court will not recommend granting Plaintiff further leave to amend.  This is Plaintiff's third complaint.  While Plaintiff provided more details regarding the alleged threats to his safety, he once again only named the Warden as a defendant.  Additionally, he failed to provide additional factual allegations regarding what he told the Warden and other prison officials, despite being explicitly told he should do so by the Court.  (ECF No. 10, p. 7) ("If Plaintiff chooses to amend his complaint he should provide additional factual allegations
\\\

regarding what he told the Warden and other prison officials.").[1]

## IV.   CONCLUSION, RECOMMENDATIONS, AND ORDER

The Court recommends that this action be dismissed without granting Plaintiff further leave to amend.  In the Court's prior screening order, the Court identified the deficiencies in Plaintiff's complaint, provided Plaintiff with relevant legal standards, and provided Plaintiff with an opportunity to amend his complaint.  Plaintiff filed his Second Amended Complaint with the benefit of the Court's screening order, but failed to cure the deficiencies identified in the screening order.  Thus, it appears that further leave to amend would be futile.

Accordingly, the Court HEREBY RECOMMENDS that:

1.   This action be dismissed for failure to state a claim;

2.   All outstanding motions be denied as moot; and

3.   The Clerk of Court be directed to close this case.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

\\\
\\\
\\\
\\\
\\\
\\\

---

[1] While not deciding the issue, the Court notes that Plaintiff only seeks injunctive relief and that he has recently been moved to a different institution (ECF No. 12).  Thus, there is also an issue of mootness.

1    Additionally, IT IS ORDERED that:

2        1.   The Clerk of Court is directed to assign a district judge to this case; and

3        2.   The Clerk of Court is directed to docket Plaintiff's Second Amended Complaint.

4

5  IT IS SO ORDERED.

6    Dated:   __June 14, 2021__          /s/ _Erica P. Grosjean_

7                                       UNITED STATES MAGISTRATE JUDGE